JAMES A. GRANT et al., Appellants, *v.* COBRE GRANDE COPPER COMPANY, Respondent, Impleaded with Others.

1. PRACTICE ON APPEAL. It is not the practice of the Court of Appeals to search the complaint on a motion apparently not involving the merits with the care used on demurrer, but where an order for the publication of a summons has been reversed upon the ground that the complaint fails to state facts sufficient to constitute a cause of action the court will determine that question.

2. ASSUMPTION OF CONTROL OF CORPORATION — EFFECT OF. Where a stockholder in a corporation ousted its officers, elected himself to the presidency, appointed his clerk as secretary and treasurer, assumed all the duties of such officers in the management of the corporation, including the payment of obligations of such company to himself and transferred all the interest of such corporation to a new corporation for the stock of the new corporation, all of which stock he appropriated to himself, he placed it beyond the power of the old corporation to carry out its contract, and he is deemed to have undertaken to look to the new corporation for the discharge of the obligations of the old one, more especially when the business of the new corporation was extremely profitable and it was able to reimburse such stockholder for the amount of the indebtedness of the old corporation to him.

3. COMPLAINT IN STOCKHOLDER'S ACTION, HELD SUFFICIENT TO AUTHORIZE ORDER OF PUBLICATION. The complaint alleging these facts and others in an action by a stockholder in the old corporation against the person so acting, in which action both corporations are parties, and asking for an accounting as to the proceeds of the property so transferred, states a cause of action in which an order of publication may be properly granted upon compliance with the provisions of the Code of Civil Procedure.

*Grant* v. *Cobre Grande Copper Co.*, 126 App. Div. 750, reversed.

(Argued September 29, 1908; decided November 10, 1908.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered June 12, 1908, which reversed an order of Special Term denying a motion to vacate an order directing the service of a summons by publication and vacated such order.

The facts, so far as material, and the questions certified are stated in the opinion.

*Samuel S. Watson, Walter B. Raymond* and *Chester A. Jayne* for appellants. The complaint states a cause of action. (Perry on Trusts, § 166; Story Eq. Juris. §§ 1257, 1265; Pom. Eq. Juris. § 1048; Eaton on Equity, § 196; *Zimmerman* v. *Kimbal*, 108 N. Y. 282; *Wetmore* v. *Porter*, 92 N. Y. 76; *Briggs* v. *Davis*, 20 N. Y. 15; *U. P. Ry. Co.* v. *McAlpine*, 129 U. S. 305; *Smith* v. *Ayer*, 101 U. S. 320; *Wetmore* v. *Porter*, 92 N. Y. 76; *Wright* v. *Wright*, 54 N. Y. 437; *Mitchell* v. *Thorne*, 134 N. Y. 536; *Everett* v. *Everett*, 48 App. Div. 475; *Montgomery* v. *Boyde*, 63 App. Div. 190; *Muller* v. *Muller*, 21 Wkly. Dig. 287; *Campbell* v. *Campbell*, 23 Abb. [N. C.] 187.) The complaint states a sufficient cause of action. (*Bryan* v. *U. P. Co.*, 112 N. Y. 382; *Paget* v. *Stevens*, 143 N. Y. 172; *Hallenborg* v. *Greene*, 66 App. Div. 590; *Ernst* v. *R. & B. S. G. Co.*, 38 App. Div. 388; *Chase* v. *K. P. Co.*, 32 App. Div. 400; *Ives* v. *Smith*, 19 N. Y. S. R. 556; *Prouty* v. *M. S. & M. I. Ry. Co.*, 1 Hun, 655; *Union Trust Co.* v. *Almstead*, 102 N. Y. 729; *Williams* v. *Fitzhugh*, 37 N. Y. 444; *Gardner* v. *Ogden*, 22 N. Y. 327.)

*F. W. M. Cutcheon, M. E. Hardy* and *Augustine L. Humes* for respondent. The complaint does not state a cause of action. (*Grant* v. *C. C. C. Co.*, 189 N. Y. 241; *Bryan* v. *U. P. Co.*, 112 N. Y. 382; *Paget* v. *Stevens*, 143 N. Y. 172; *Niles* v. *N. Y. C. R. R. Co.*, 176 N. Y. 119; *Flynn* v. *B. C. Ry. Co.*, 158 N. Y. 493; *Alexander* v. *Donohoe*, 143 N. Y. 203; *Gansevoort Bank* v. *Empire Co.*, 117

App. Div. 455; *Clemons* v. *A. F. Ins. Co.*, 70 App. Div.
435; *Bonnell* v. *Griswold*, 68 N. Y. 294; *Bogardus* v. *N.
Y. L. Ins. Co.*, 101 N. Y. 328.) Even if the complaint can
on any theory be held to state a cause of action, yet a "suffi-
cient cause of action" as required by the Code is not shown,
and the nature of the action is not such as to justify an order
of publication. (*Von Hesse* v. *Mackaye*, 55 Hun, 365; *Bryan*
v. *U. P. Co.*, 112 N. Y. 382; *Paget* v. *Stevens*, 143 N. Y.
172; *Chesley* v. *Morton*, 9 App. Div. 461; *Montgomery* v.
*Boyd*, 60 App. Div. 133; *Hart* v. *Sansum*, 110 U. S. 151;
*Kavanagh* v. *Comm. Trust Co.*, 181 N. Y. 121; *Hanna* v.
*P. Nat. Bank*, 76 App. Div. 224; *Deering* v. *Perdicaries*,
96 U. S. 193.)

HAIGHT, J. This action was brought by the plaintiffs, as
stockholders of the defendant, the Cobre Grande Copper
Company, an Arizona corporation, in behalf of themselves
and all other stockholders of the corporation similarly situ-
ated, to have the defendant, the Cananea Consolidated Copper
Company, a Mexican corporation, of which William C. Greene
is the president, adjudged to be the holder in trust for the
benefit of the Cobre Grande Copper Company of certain
mines and mining properties situated in the republic of
Mexico, and to compel such corporation and William C.
Greene, its president, together with the Greene Consolidated
Copper Company, a West Virginia corporation organized as
a holding company, of which Greene is also president, to
account to the Cobre Grande Copper Company and to the
plaintiffs for income and proceeds arising from the work, use
and occupation of such mines and mining properties.

The plaintiffs, upon affidavits showing facts in compliance
with the provisions of sections 438 and 439 of the Code of
Civil Procedure, procured an order directing the service of
the summons upon the defendant Cobre Grande Copper Com-
pany by publication. A motion was made at the Special
Term to set aside the order. The motion was denied, but
upon appeal the Appellate Division reversed the order and

granted the motion.   It then allowed an appeal to this court, certifying the following questions for our determination:

"1. Had the court jurisdiction upon the papers presented to grant an order .directing the service of the summons in this action upon the defendant the Cobre Grande Copper Company by publication.

"2. Was the court justified in vacating an order duly granted directing the service of a summons by publication upon the papers presented."

Section 1780 of the Code of Civil Procedure provides that "An action against a foreign corporation may be maintained by a resident of the state, or by a domestic corporation, for any cause of action."   Section 438, so far as now material, provides, "An order directing the service of a summons upon a defendant, without the state, or by publication, may be made in either of the following cases: 1. Where the defendant to be served is a foreign corporation."   Section 439 provides that "The order must be founded upon a verified complaint, showing a sufficient cause of action against the defendant to be served, and proof by affidavit of the additional facts required by the last section."   The reversal of the Appellate Division appears to have been based upon the latter provision of the Code and upon the ground that the complaint filed in this action does not state a sufficient cause of action against the Cobre Grande Copper Company.   It is not our practice upon motions of this character to search the complaint with the care we would upon a demurrer; but inasmuch as the Appellate Division has held that the complaint fails to state a cause of action, it becomes our duty to now finally determine that question as to the point upon which that court based its decision.

The complaint, in substance, alleges that on or about the 26th day of November, 1898, the defendant William C. Greene contracted to convey to one George Mitchell certain mines and mining properties located in the Cananea mountains, in the republic of Mexico, in consideration of the sum of $12,500 in cash, and the further sums of $37,500 to be paid on the 26th day of November, 1899 ; $100,000 to be paid

the 26th day of November, 1900, and $100,000 to be paid the 26th day of November, 1901. Greene at the time of the execution of this agreement executed deeds conveying such mining properties to Mitchell, and delivered the same in escrow to the Phœnix National Bank of Phœnix, Arizona, for delivery to Mitchell upon his complying with the terms of the agreement. Immediately upon the execution of the agreement Mitchell paid to Greene the sum of $12,500 in cash, as provided by the contract, and thereupon entered into possession of the mines and mining properties and worked and operated them in accordance with the terms of the agreement, and in conjunction with the defendant Greene, who had a license from the government of Mexico to operate mines in the "Zona Libra" or "neutral zone" of the republic of Mexico in which said mines were located, and began to work and develop the same and to erect machinery and other appliances for their proper operation. Thereupon Greene and Mitchell entered into a contract of copartnership under the name of Mitchell, Greene & Company for the development, improvement and working of the mines so conveyed by Greene to Mitchell, and they continued to work and develop the mines under the license to the defendant Greene until about the 25th day of April, 1899, at which time the defendant Cobre Grande Copper Company was incorporated, and thereupon Mitchell, in consideration of the transfer to him of 199,995 shares of the capital stock of the company, transferred to that corporation all his property, right, title and interest in said mines and mining properties held by him individually or in trust, acquired from Greene under the contract of November 26th, 1898. On the 22d day of July, 1899, the defendant Greene executed and delivered to the defendant Cobre Grande Company an agreement ratifying and confirming the agreement of November 26th, 1898, and consented to the transfer by Mitchell of all said properties to the Cobre Grande Copper Company, and in addition thereto the defendant Greene also transferred to the Cobre Grande Copper Company other mines, mining claims,

and mining properties contiguous and adjoining the mines and mining properties conveyed to it by Mitchell, specifically describing them by name. But the defendant Greene continued to hold the titles to the said mines and mining properties in trust for and on account of the defendant Cobre Grande Copper Company, which being an Arizona corporation and not having a license from the republic of Mexico could not operate such mines. It also appears that on the 24th day of July, 1899, the defendant Greene conveyed to the defendant Cobre Grande Copper Company the Elisa mine, so called, located in the republic of Mexico and adjacent to the properties already conveyed, and accepted from the Cobre Grande Copper Company in full payment therefor four promissory notes of $25,000 each, aggregating the sum of $100,000, one payable July 24th, 1901, one on July 24th, 1902, one on July 24th, 1903, and the last on July 24th, 1904.

It further appears from the allegations of the complaint that one John H. Costello had become the president of the Cobre Grande Copper Company, J. Henry Wood, the secretary and treasurer, and Cornelius O'Keefe, its manager at the works and mines in Mexico; that Greene, Mitchell and one Treadwell, who were also directors in the corporation, had become dissatisfied with the management of the other officers, and that thereupon they had a conference with one J. Edward Addicks, of Delaware, and one Thomas W. Lawson, of Boston, for the purpose of securing the necessary funds to pay the debts and protect and preserve the properties of the Cobre Grande Copper Company, and that at such conference it was arranged to oust Costello, the president, Wood, the secretary and treasurer, and O'Keefe, the manager, and to organize a Mexican corporation to take over the titles to the mining properties and to operate the mines, and to organize a holding company to take over the stock of the other companies, and that the necessary funds to carry out this arrangement should be advanced by Addicks and Lawson. Thereupon Greene, Mitchell and Treadwell proceeded to Arizona and on the 23rd day of September, 1899, they as directors of

the company held a meeting at the office of the company and declared the election of Costello and Wood null and void, on the ground that proper notice of the meeting at which they were elected had not been given. They then proceeded to fill the vacancies so created by the election of William C. Greene as president, White, an employee of his, as secretary and treasurer, and one Norton Chase, an attorney in the employ of Walter S. Logan, who was the attorney for the defendant Greene, as a director, and then voted to dispense with the services of O'Keefe as manager. The defendant Greene, assuming to act as president of the Cobre Grande Copper Company, and Treadwell, acting as its vice-president, proceeded to Mexico and took possession, in the interest of the Cobre Grande Copper Company, of all the mines and mining properties of the company with all the appurtenances, appliances ard supplies, together with the products that had been mined and the returns from the various smelters to which the products had been shipped, which supplies and products amounted to many thousands of dollars in value. Thereupon, pursuant to the arrangement with Lawson and Addicks, the defendant Greene, with Norton Chase, his attorney, proceeded to organize the defendant, the Cananea Consolidated Copper Company, Sociedad Anonima, under the laws of the republic of Mexico, to hold the titles to said mines and mining properties, and on or about the 11th day of October, 1899, pursuant to such agreement with Lawson and Addicks, the defendant Greene executed an agreement in writing in the Spanish language whereby he undertook to transfer and convey to the Cananea Consolidated Copper Company all the mines and mining properties of the Cobre Grande Copper Company, including the Elisa mine and all the mines and mining properties which had been transferred and conveyed to the Cobre Grande Copper Company ; that the Cananea Copper Company accepted said mining property with full knowledge of and subject to all the rights, interest and claims of the defendant Cobre Grande Copper Company and its stockholders ; that all the shares of the capital

stock of the Cananea Company were issued and delivered to the defendant Greene except seven shares held by persons to qualify them as directors, and immediately thereupon the Cananea Consolidated Copper Company entered into possession of all the mining properties of the Cobre Grande Copper Company and proceeded to work and operate the same, and ever since has continued to do so until the present time.

It is also alleged that, pursuant to the agreement with Lawson and Addicks, Greene, Mitchell, Treadwell, Barnes and Walter S. Logan, Greene's attorney, organized the Greene Consolidated Copper Company of West Virginia as a holding company, with Greene, Mitchell, Treadwell and Logan as its directors and officers ; that the main purpose and object of its organization was to take over and hold a majority in interest of the capital stock of the defendant Cobre Grande Copper Company and all the capital stock of the defendant Cananea Consolidated Copper Company except such shares as were necessary to be held by individuals to qualify them to act as directors.  The capital stock of the Greene Consolidated Company was fixed at $5,000,000 and divided into five hundred thousand shares of the par value of $10 each. Upon the organization of the Greene Consolidated Company all the stock of the Cananea Company, except seven shares which were necessary to qualify directors, was turned over by Greene to the treasury of the Greene Consolidated Company, which enabled the Greene Company to exercise control and dominion over the Cananea Company and over all its assets, properties, income, profits and advantages arising from the operation of its mines, and from which it has been enabled to distribute upwards of four millions of dollars in dividends.

It is also alleged, in substance, that upon the organization of the Greene Consolidated Copper Company, Greene on behalf of the company offered and agreed that all stockholders of the Cobre Grande Copper Company should have the right to exchange their stock in that company for the stock in the Greene Consolidated Company, share for share ; that

the purpose of making such offer for the exchanges of stock was to obtain a majority of the shares of the capital stock of the Cobre Grande Copper Company and thereby obtain control and dominion over its affairs and its property, and as soon as the defendant Greene and the Greene Consolidated Company had obtained a majority of the shares of the capital stock of the Cobre Grande Copper Company all offers to exchange stock of the Greene Consolidated Company for that of the Cobre Grande Copper Company were withdrawn, and all of the rights of the plaintiffs and other minority stockholders of the Cobre Grande Copper Company similarly situated, to participate in the earnings, profits and benefits accruing or arising from the mines and properties of the Cobre Grande Copper Company were denied by the defendants Greene and the Greene Consolidated Company and the Cananea Company.

It is further alleged that the $37,500 payable on November 26th, 1899, as part of the purchase price of the mines and mining properties conveyed by the defendant Greene to the defendant Cobre Grande Copper Company by the agreement on July 22d, 1899, and all other payments therein specified and provided to be made and paid and all agreements and covenants to be carried out and performed by the defendant Cobre Grande Copper Company under that agreement, including the payment of the notes given as the purchase price of the Elisa mine, " were paid, made, done and performed at the time and in the manner provided in said agreement and by or for the account of the defendant Cobre Grande Copper Company, or the payments and conditions thereof were waived, or settled in time and in manner agreed upon and accepted by all parties in interest, and the funds to make said payments and to carry out, do and perform the agreements, covenants and things to be carried out, done and performed by or on account of the defendant Cobre Grande Company, as aforesaid, were raised and provided and obtained and secured upon the faith, credit and pledge of the said mines and mining properties of the defendant Cobre Grande Copper Company and from the income and profits of the said mines and

mining property of the defendant Cobre Grande Copper Company."

We have already stated the relief sought to be obtained by the plaintiffs. The complaint contains many other allegations in much detail, to some of which we shall hereafter have occasion to refer. We have only given a brief summary of the allegations which we deem necessary to properly understand the questions presented for our determination. The determination of the Appellate Division that the complaint failed to state a cause of action was based upon the allegations of the complaint, to which we last referred. The prevailing opinion says with reference thereto that, "if the cause of action is one to establish a trust of real estate and incidentally to obtain an accounting with reference to the income or as an action for an accounting as to the income of an alleged trust and incidentally for a declaration of trusts, the alleged rights of the Cobre Grande Copper Company, which the plaintiffs are attempting to assert, depend upon the continued existence of the option right to purchase the properties in question and the right to hold possession thereto under the agreements collateral to the option. As the escrow agreements were mere option contracts entitling the Cobre Grande Copper Company, upon making certain payments, to receive conveyances of the property, it is necessary that the complaint should show either that the payments required to be made in order to entitle the Cobre Grande Company to a delivery of the deeds were made or that facts should be alleged showing a modification or waiver of these conditions so that it may appear that such rights have actually accrued to the Cobre Grande Company. Since it appears that all the contract rights of the Cobre Grande Copper Company, independently of the escrow agreements, were to cease at Greene's election upon its failure to perform any of the covenants contained in the license agreement of November 26th, 1898, as modified by the agreement of July 22d, 1899, and as it expressly appears that Greene claimed default had occurred and attempted to exercise his election to terminate the rights

of the Cobre Grande Copper Company, it was necessary, in order to make out a cause of action, that the pleader should allege that the Cobre Grande Copper Company had duly performed all the covenants and conditions of the license agreement with Greene of July 22d, 1899, or should set up the facts establishing a waiver thereof." The opinion then proceeds to quote the allegation to which we have referred, and then says with reference thereto that it is the only allegation of the complaint concerning the performance by the Cobre Grande Copper Company of the contracts, and that it is not an allegation that the covenants or conditions of any of the agreements were performed or that they were waived; that an allegation of performance made in the alternative is not a sufficient allegation either of performance or of waiver.

It must be conceded that the allegations of performance, on the part of the Cobre Grande Copper Company of the requirements of the optional contracts, so called, as above quoted, are in the alternative, and that the effect is to allege payment or waiver or settlement. But passing the question as to whether the complaint would be demurrable for this reason, under our modern practice, or whether the parties should move to make the complaint more definite and certain, we shall proceed to the consideration of another phase of the question. It must be borne in mind that this is an equitable action brought to compel an accounting; that it is not an action at law in which allegations of payment, of waiver and of settlement are treated as separate and distinct matters of performance or defense. The allegations of the complaint under review are general in form and are in effect a summary of the conclusion reached from the allegations of fact preceding those under review. The Appellate Division, we think, erred in its statement that the allegations referred to were the only allegations of the complaint concerning performance. Under the modified contract of July 22d, 1899, the terms of payment provided for under the contract of November 26th, 1898, were to be made in installments, $37,500 November 26th, 1899, $50,000 November 26th, 1900, $50,000

November 26th, 1901, $50,000 November 26th, 1902, and the remaining $50,000 November 26th, 1903. It will, therefore, be observed that the first payment falling due was November 26th, 1899. Prior to this time Greene, Mitchell and Treadwell had entered into their agreement with Addicks and Lawson for the ousting of the president, secretary and treasurer of the Cobre Grande Copper Company and the organization of two new corporations, which they carried into effect on the 23rd day of September, 1899, by which Greene and his associates became the officers of the Cobre Grande Copper Company, its president and directors, and then on the 11th day of October, 1899, organized the new Cananea Company under the laws of Mexico and transferred the properties belonging to the Cobre Grande Copper Company to it, Greene taking all of the stock except seven shares, which were reserved to qualify directors in that corporation. All this took place before any payment, as we have seen, became due to him from the Cobre Grande Copper Company. Greene, by ousting these officers and taking the presidency of the Cobre Grande Copper Company and appointing as secretary and treasurer his clerk, assumed the performance of all the duties of such officers in the management of the corporation, including the payment of the obligations of the company to himself and the preservation of the contract right of the corporation, and when he transferred and conveyed all of the property and interest of the company to the newly-organized Cananea Company for the stock of that company, which he appropriated to himself, he put it beyond the power of the Cobre Grande Copper Company to further perform its contracts with him, and thereupon he must be deemed to have undertaken to look to the Cananea Company for the discharge of the obligations of the Cobre Grande Copper Company.

It further appears from the allegations of the complaint, as we have seen, that the operation of these mines by the Cananea Company has been extremely profitable, and at least four millions of dollars has been divided among the stockholders of the Greene Consolidated Company, which was organized as

the holding company. It is, therefore, apparent that the Cananea Company, of which Greene was the president, has been able to reimburse him many times over for the amount that was owing to him by the Cobre Copper Grande Company at the time its properties were transferred to the Cananea Company.

Again, as we have seen from the allegations of the complaint, the conveyance of the Elisa mine, so called, to the Cobre Grande Copper Company, was absolute and not conditional Greene accepted in payment therefor four promissory notes of $25,000 each. It was, therefore, a completed transaction, and no option remained to be exercised, or act to be performed, as a condition for the passing of the title. This mine was also transferred to the Cananea Company, and that company has had the benefit of the proceeds therefrom. We consequently conclude that the complaint states a good cause of action, at least in so far as the questions discussed are concerned.

Our attention has been called to other questions pertaining to jurisdiction, etc., some of which were considered when this case was here before. (189 N. Y. 241–252.) Further discussion at this time is not deemed necessary.

The order of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in all courts, and the questions certified answered, the first in the affirmative and the second in the negative.

CULLEN, Ch. J., EDWARD T. BARTLETT, VANN, WERNER, HISCOCK and CHASE, JJ., concur.

Order reversed, etc.